**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **CRYSTAL CLEAR SPEC. UTIL. DIST.** | § | |
| | § | |
| **V.** | § | **NO. 1:17-CV-254-LY** |
| | § | |
| **BRANDY MARTY MARQUEZ, et al.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before this Court are Defendant Public Utility Commission Officials' Motion to Dismiss (Dkt. No. 11); Defendant Las Colinas' Motion to Dismiss (Dkt. No. 12); Plaintiff's Response (Dkt. No. 15); Defendant Las Colinas' Reply (Dkt. No. 16); and Plaintiff's Sur-Response (Dkt. No. 18). The District Court referred the above motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

Crystal Clear Special Utility District brings this suit against the Commissioners of the Public Utility Commission of Texas (PUC) in their official capacity,[1] PUC Executive Director Brian H. Lloyd, and Las Colinas San Marcos Phase I, LLC, alleging that the PUC's decertification of property within Crystal Clear's certificate of convenience and necessity violated 7 U.S.C. § 1926.

---

[1] Though they are sued only in their official capacity, the complaint included the names of the individuals who were the Commissioners at the time of the filing. Since that time, two of the Commissioners (Donna Nelson and Kenneth Anderson) have left office. According to the PUC's public website, the current Commissioners are DeAnn T. Walker, Brandy Marty Marquez, and (as of November 14, 2017) Arthur D'Andrea. Pursuant to FED. R. CIV. P. 17(d), the Court **ORDERS** Crystal Clear to submit a motion no later than December 1, 2017, substituting the current Commissioners in place of Nelson and Anderson.

Congress enacted § 1926 to protect a utility that is a recipient of federal loans from curtailment of its service area and encroachment by municipalities. *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 917 (5th Cir. 1996). The statute makes the territory that a federally-indebted water association serves "sacrosanct," and specifically requires that

> [t]he service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan. . . .

*Id.* at 915; 7 U.S.C. § 1926. Crystal Clear received a federal loan under § 1926, and its CCN granted by the PUC covers about 165 square miles within Hays, Comal, and Guadalupe counties. In September 2016, Las Colinas filed a petition with the PUC under TEX. WATER CODE § 13.254(a-5) to decertify property it owns that is within Crystal Clear's CCN. This Water Code section allows for expedited decertification of a property meeting certain requirements when it is "not receiving water or sewer service." *Id.* The statute directs that "[t]he utility commission may not deny a petition received under Subsection (a-5) based on the fact that a certificate holder is a borrower under the federal loan program." After the decertification petition was filed, Crystal Clear intervened in the proceedings, arguing that the Texas statute was preempted by 7 U.S.C. §1926 and the PUC should deny the petition. The PUC found that it was required to abide by the state law and granted Las Colinas' petition. Dkt. No. 11-1 at 18. Shortly after, Crystal Clear filed an appeal in state court. *Id.* at 3. In addition to appealing the order pursuant to the Texas administrative procedure act, Crystal Clear also sought declaratory relief based on claims of federal preemption and ultra vires acts by the PUC, and seeking a construction of the term "service" in the Texas statute. Several months

later, and with very little having happening in the state court case until recently[2], Crystal Clear filed this case in federal court, arguing that TEX. WATER CODE §§ 13.254(a-5) & (a-6) are preempted by 7 U.S.C. § 1926, and therefore unconstitutional. It seeks an injunction and declaratory relief to this effect.

## II. ANALYSIS

Both the PUC and Las Colinas filed motions to dismiss alleging that (1) the Anti-Injunction Act bars Crystal Clear's claims, and (2) the Court should abstain from deciding this case under various abstention doctrines. The PUC additionally argues that they are immune from suit under the Eleventh Amendment and that the exception recognized in *Ex Parte Young* does not apply.

### A.    Eleventh Amendment Immunity

First, the PUC argues that Crystal Clear's claims against them are barred by the Eleventh Amendment.[3] Their argument is broken into four distinct points. First, that *Ex Parte Young* is not applicable to this action. Second, that Crystal Clear lacks standing to seek an injunction because it cannot show an irreparable injury when TEX. WATER CODE § 13.254 provides for compensation. Third, that Crystal Clear cannot assert a federal right. And finally, that there is an important state sovereignty interest that precludes application of *Ex Parte Young*. The Court will take each point in turn.

---

[2]Las Colinas filed an advisory on November 16, 2017 notifying the Court that a briefing schedule has been set and the matter is set for a hearing at the end of January 2018. Dkt. No. 31.

[3] The PUC also argues that § 1926(b) does not provide for a private cause of action. They provide no case law or legal argument to support this assertion. As Crystal Clear notes, numerous courts have permitted private suits under the statute. *See, e.g., N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910 (5th Cir. 1996) (addressing claims under § 1926); *Miss. Rural Water Ass'n, Inc. v. Miss. Pub. Serv. Comm'n*, No. 3:14-CV-848, 2014 WL 12540566 (S.D. Miss. Dec. 9, 2014) (addressing claims against the state public service commission for violations of § 1926).

3

1.      *Ex Parte Young*

The Eleventh Amendment precludes suits in which a state agency is named as a defendant. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This includes suits against state officials when "the state is a real, substantial party in interest." *Id.* at 101-02. However, there is a narrow exception to Eleventh Amendment immunity under *Ex Parte Young*, 209 U.S. 123 (1908), allowing a plaintiff to bring a suit for a violation of the Constitution or federal law when it is "brought against individual persons in their official capacities as agents of the state, and the relief sought [is] declaratory or injunctive in nature and prospective in effect." *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). To decide if the Eleventh Amendment bar is inapplicable under *Ex Parte Young*, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011).

Crystal Clear contends that its claims fall into the *Ex Parte Young* exception because it asserts a violation of federal law and seeks declaratory and injunctive relief that is prospective in nature against the appropriate state officials, in their official capacity.[4] The PUC disputes this, arguing that Crystal Clear's claims are actually retrospective. However, Crystal Clear's claims for declaratory and injunctive relief are clearly prospective in nature. Crystal Clear alleges that the PUC decertified a portion of its CCN in violation of § 1926 and seeks to enjoin the PUC from enforcing

---

[4] The PUC argues that Lloyd, executive director of the PUC, does not have a connection with the disputed Act's enforcement, as required under *Ex Parte Young*, and should be dismissed. *See* Dkt. No. 11 at 7 n.2 (citing *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)). Crystal Clear failed to respond to this argument. The Commissioners are the final, official actors of the PUC with regard to § 13.254, and nothing in the complaint explains why suit against the executive director is necessary when the Commissioners are already named. As such, the Court **RECOMMENDS** that the District Court **DISMISS** Brian Lloyd.

the allegedly unconstitutional decertification order, "which would prospectively abate the alleged violation." *Id.* at 255-56; *see also Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) ("The prayer for injunctive relief—that state officials be restrained from enforcing an order in contravention of controlling federal law—clearly satisfies our 'straightforward inquiry.'"). Crystal Clear's claims for declaratory and injunctive relief fit squarely within the *Ex Parte Young* exception and are not barred by the Eleventh Amendment.

### 2. Irreparable Injury

The PUC next argues that Crystal Clear lacks standing to assert a claim for injunctive relief because it cannot show an irreparable harm arising from the decertification. The PUC points to TEX. WATER CODE § 13.254(a-6) which states that "[t]he utility commission may require an award of compensation by the petitioner to a decertified retail public utility" if it grants a petition filed under § 13.254(a-5). This, they argue, sufficiently compensates Crystal Clear, and thus it cannot show an irreparable injury.

This argument is based on a flawed understanding of the law governing permanent injunctions. The standard for obtaining a permanent injunction in an express preemption case does not require a showing of irreparable injury, as it is presumed when preemption is established. As the Fifth Circuit has stated several times:

> The party seeking a permanent injunction must meet a four-part test. It must establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest. *In an express preemption case, however, "the finding with respect to likelihood of success carries with it a determination that the other three requirements have been satisfied."*

*VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006) (citing *Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 783 (5th Cir.1990)) (citations omitted) (emphasis added).  Thus, a district court in Mississippi rejected the irreparable harm argument in a case under § 1926(b).  *Miss. Rural Water Ass'n, Inc. v. Miss. Pub. Serv. Comm'n*, 2014 WL 12540566, at *3–4 (S.D. Miss. Dec. 9, 2014) (finding that any action that violated this statute results in irreparable harm).  This argument thus has no merit.

### 3. No Federal Right Under § 1926

The PUC next argues that Crystal Clear cannot assert a federal right under § 1926 for decertification of its CCN because "[a] water utility's right to 'provide service' or 'make service available' for purposes of § 1926 arises solely under state law," and "Section 1926(b) does not confer any right to a particular service area."  Dkt. No. 11 at 8.  According to the PUC, because Texas grants the utility's CCN, any decertification of that area by the state would not curtail or limit the utility's service area protected under § 1926.  This argument is directly contrary to the federal statute and applicable case law, and begs the entire question presented by this case.  Under § 1926, "[t]he service area of a federally indebted water association is sacrosanct." *N. Alamo,* 90 F.3d at 915.  This statute is intended to be interpreted broadly.  *Id.*  Thus, encroachment in any form, such as "competing franchises, new or additional permit requirements, or similar means," is prohibited.  *Id.* (quoting *City of Madison v. Bear Creek Water Ass'n, Inc.*, 816 F.2d 1057, 1060–61 (5th Cir. 1987)).  Section 1926(b) plainly grants federally indebted rural water utilities a right to protection against encroachment, and there is no legal support whatsoever for the PUC's claim to the contrary.  *See Miss. Rural Water Ass'n*, 2014 WL 12540566, at *1 (allowing a § 1983 action against the state

public service commission for application of a statute that conflicted with § 1926). This argument is meritless.

### 4. Important State Sovereignty Interests

Lastly, the PUC contends that, even if all other elements of the exception are met, *Ex Parte Young* should not apply in this case because the provision of utilities represents an important state interest. The PUC relies mainly on *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 (1997) to support its argument. In *Couer d'Alene*, the Supreme Court found that, based on the facts presented by that case, *Ex Parte Young* did not apply because the suit "implicate[d] special sovereignty interests." *Id.* at 281. There, the Couer d'Alene Tribe sought an injunction for an allegedly "ongoing violation of its property rights in contravention of federal law." *Id.* The court viewed the "the Tribe's suit [as] the functional equivalent of a quiet title action." *Id.* The state's interest in its sovereign land, the court found, precluded application of *Ex Parte Young* and required resolution in state court. *Id.*

*Coeur d'Alene* is an outlier, however; most cases that cite it do so in the process of declining to apply it. *E.g.*, *Severance v. Patterson*, 566 F.3d 490, 495 (5th Cir. 2009) ("In contrast to *Coeur d'Alene* and *Mauro*, Severance's suit is not the functional equivalent of a quiet title action: Title to the properties at issue rests with Severance, not the State.").[5] Simply because a party is challenging an action taken under a state's police powers does not mean *Couer d'Alene* applies; rather, the suit

_____

[5] *See also Tarrant Regional Water Dist. v. Sevenoaks*, 545 F.3d 906, 912 (10th Cir. 2008) (finding that a suit which challenged a state's water use and transport laws was not barred by *Coeur d'Alene*); *Arnett v. Myers*, 281 F.3d 552, 568 (6th Cir. 2002) ("[T]his court does not read the ruling of *Coeur d'Alene* to extend to every situation where a state property interest is implicated."); *TFWS, Inc. v. Schaefer*, 242 F.3d 198, 205–06 (4th Cir. 2001) (distinguishing the regulation of liquor from a suit to "dispossess the State from land within its borders and remove that land from the State's regulatory authority"); *In re Pacific Gas & Elec. Co.*, 263 B.R. 306, 313–14 (Bankr. N.D. Cal. 2001) (finding that *Couer d'Alene* did not apply to a proceeding affecting regulation of electric utilities).

must be "the functional equivalent of a quiet title action" against the state. *Id.* at 495. The present

suit is nothing like a quiet title action against Texas. Crystal Clear is not attempting to acquire

property currently under the control of the state. Rather, it is seeking to assert its federal right against

encroachment of its certified territory. There are not any "special sovereignty interests" implicated

here, as there were in *Coeur d'Alene*. 521 U.S. at 281. As explained by a district court,

> here . . . there are preemption considerations and competing sovereignty interests.
> Should Plaintiff ultimately prevail, the relief requested would not prevent the State
> from continuing to regulate electricity on an intrastate basis; rather, it would ensure
> that Defendants apply state law in a manner that is consistent with federal law.

*Pacific Gas & Elec. Co. v. Lynch*, 2001 WL 840611, at *15 (C.D. Cal. May 2, 2001). In sum, the

*Ex Parte Young* exception applies here, and the suit is not barred by the Eleventh Amendment.

## B.     Anti-Injunction Act

Next, the PUC and Las Colinas contend that Crystal Clear's claims for declaratory and

injunctive relief are barred by the Anti-Injunction Act (AIA). The essence of their argument is that

granting Crystal Clear relief would in effect stay Crystal Clear's state court appeal of the PUC's

order granting Las Colinas' decertification petition. The general rule is that a federal court has the

power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and

agreeable to the usages and principles of law." 28 U.S.C. § 1651. However, this power is limited

by the AIA, which prohibits a federal court from enjoining "proceedings in a State court except as

expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect

or effectuate its judgments." 28 U.S.C. § 2283. "[T]he Act is an absolute prohibition against any

injunction of any state-court proceedings, unless the injunction falls within one of the three

specifically defined exceptions in the Act." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977).

As noted, the basis of the PUC and Las Colinas' argument is that any decision made by this Court would in effect enjoin the state court proceeding, because a decision in this case could have a preclusive effect on the pending state court action. This, they claim, means the AIA bars the Court from proceeding with this case. This argument reads the AIA far more broadly than its terms. The AIA states that a federal court "may not grant an injunction to stay proceedings in a State court." 28 U.SC. § 2283. Simply because a federal suit touches on the same issues as a pending state case does not mean the AIA applies, as the general rule is that parallel state and federal proceedings are permitted. *See McClellan v. Carland*, 217 U.S. 268, 282 (1910) ("The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ."). Further, the fact that a parallel federal case might have a preclusive effect on a ruling by a state court is not enough to trigger the AIA, because the statute only bars suits that seek to affirmatively enjoin a state court suit. *See Tex. Emp'rs Ins. Ass'n v. Jackson*, 862 F.2d 491 (5th Cir. 1988) (barring an action where the plaintiff sought a "permanent injunction against [the defendant's] further prosecution of the state court suit" and a declaratory judgment that the state court suit was preempted by an ALJ decision).[6]

---

[6]In support if its position, Las Colinas points to the discussion in *Jackson* where the court noted that a declaratory judgment would "of course, be *res judicata* of the state suit, thus resolving it as surely as an injunction." *Id.* at 505. It argues this shows that any suit for declaratory relief which would have a preclusive effect on a state court suit is barred by the AIA. This misreads the case. In the quoted language, *Jackson* was merely noting that if a declaratory judgment had the same effect as an injunction, it could be barred by the AIA, but only "if an injunction would [also] be barred by" the AIA in the case. *Id.* at 506. In other words, the fact that a federal court's ruling in a case paralleling a state case might have a *res judicata* impact on the state case is not enough to trigger the AIA—the declaratory judgment would also have to effectively enjoin the state suit from

Here, nothing in the relief Crystal Clear requests asks for a stay or injunction of Crystal Clear's appeal from the PUC's decertification decision. In fact, the language from *Jackson* Las Colinas quotes in support of its position (Dkt. No. 16 at 4) makes it clear that in a situation like the instant case, the AIA does not apply. In the relevant language, the *Jackson* court noted that the "federal action was not to resolve a controversy that existed independently of [the] state suit; nor was it to decide some other controversy with merely incidental effect on the state suit." *Id.* at 505. That however, is the very situation here. The federal preemption question raised here exists independently of the decertification dispute raised in the state appeal, and a decision in this case will have only an incidental impact on that appeal. Crystal Clear *is* seeking to resolve a dispute independent of the state suit; it seeks to enjoin enforcement of an order entered by the PUC. The controversy in this case, though dealing with some of the same subject matter as the state court case, is not directly "aimed at a pending state proceeding." *Id.* at 506. The issue raised in this case is a peculiarly federal question: does 7 U.S.C. § 1926 preempt the statute the PUC relied on in granting Las Colinas' petition decertifying a part of Crystal Clear's CCN, and thus invalidate the PUC's order? Indeed, there are a number of abstention doctrines addressing parallel lawsuits (which Defendants themselves raise and which are discussed in the next section), and those doctrines would be completely unnecessary if Defendants' interpretation of the AIA were correct. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) (addressing abstention on the basis of parallel proceedings in an action seeking an injunction and declaratory judgment). The mere fact that the same issues are being litigated both here and in the state case, and that a decision by this

moving forward.

Court might have a preclusive impact on the state court case, does not mean Crystal Clear's suit seeks to enjoin the state suit. The AIA is therefore inapplicable.

## C. Abstention

Finally, Las Colinas and the PUC contend that this Court should abstain from deciding this action under: (1) *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); (2) *Younger v. Harris*, 401 U.S. 37 (1971); (3) *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941); and (4) *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) (*Brillhart/Wilton*).

### 1. Burford

The Supreme Court has held that a court should decline to hear a case when there is a complex state administrative procedure implicated in the suit. *Burford v. Sun Oil Co.*, 319 U.S. 315, 334 (1943). In *Burford*, the Court found that the complex administrative procedures surrounding oil and gas regulations were better reserved for the state court and inappropriate for federal review. *Id.* at 326–28. In explaining the reasons for this approach, *Burford* emphasized that there was a need for centralized decision-making in this area, and a single agency was better equipped to address the complicated issues. *Id.* Federal review would only lead to "[c]onflicts in the interpretation of state law, dangerous to the success of state policies." *Id.* at 334. The court therefore dismissed the action. Abstention under *Burford* is appropriate when the "issues 'so clearly involve basic problems of [State] policy' that the federal courts should avoid entanglement." *Aransas Project v. Shaw*, 775 F.3d 641, 649 (5th Cir. 2014) (quoting *Burford*, 319 U.S. at 332). There are two situations in which a federal court should abstain pursuant to *Burford*:

> (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*Id.* (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (*NOPSI*)).  The Fifth Circuit has identified five factors for courts to assess when considering *Burford* abstention:

> (1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review.

*Id.* (quoting *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993)).

Applying the factors here demonstrates that *Burford* abstention is not appropriate.  First, Crystyal Clear's claim arises under federal law.  It asserts the Texas statute that the PUC used to decertify a portion of Crystal Clear's DCN is preempted by 7 U.S.C. § 1926.  The second factor focuses on whether the federal court would have to resolve state law or local issues; that is, "whether the plaintiff's claim may be in any way entangled in a skein of state law that must be untangled before the federal case can proceed."  *Id.* (quoting *Sierra Club v. City of San Antonio*, 112 F.3d 489, 795 (5th Cir. 1997)).  Allowing a federal court to resolve such issues "might disrupt the state's programs and would immerse the court in local law and facts."  *Id.* at 650 (internal quotations omitted).  This does not mean, however, that a court is required to abstain "merely because resolution of a federal question may result in the overturning of a state policy."  *Id.* (quoting *NOPSI*, 491 U.S. at 363).  This factor also weighs against abstention, as there are no unsettled state law issues the Court would need to resolve to decide the federal law preemption question.  As noted by

12

other courts with cases under § 1926(b), resolution of the case "does not require inquiry into unsettled issues of state law so much as an interpretation of the federal statute and its underlying purpose." *El Oso Water Supply Corp. v. City of Karnes City*, 2011 WL 9155609, at *4 n.6 (W.D. Tex. Aug. 30, 2011). As a Northern District court put it, "[w]hat the City has characterized as difficulties are not difficult *questions* but difficult *consequences* of a fairly straightforward federal law. . . . As supreme federal law, § 1926 displaces contrary state law." *Becker-Jiba Water Supply Corp. v. City of Kaufman*, 2003 U.S. Dist. LEXIS 10334, at *16–17 (N.D. Tex. June 18, 2003). This factor weighs against abstention.

For the third and fourth factors, Texas clearly has an interest in regulating its natural resources and maintaining a coherent policy for managing water systems. However, Congress has limited a state's power when it comes to federally indebted rural water associations. In such a situation, these factors have less weight, because while "an important state interest is involved, an equally important federal interest is at stake as well." *N. Alamo*, 90 F.3d at 915; *see also Aransas Project*, 775 F.3d at 651. Thus, other courts have declined to abstain from § 1926 suits under these factors. *E.g.*, *Becker-Jiba* 2003 U.S. Dist. LEXIS 10334, at *16 (though application of § 1926 might "lessen the power of the State of Texas to regulate its natural resources," that this was not a reason to abstain). Similarly, though Texas has a strong interest in regulating water service providers, this ability to regulate has been fundamentally limited by § 1926. Both the third and fourth factors, therefore, fail to swing the balance in the PUC's favor. As for the fifth factor, while there is a state forum in which these issues might be able to be reviewed, there are significant limitations presented by forcing Crystal Clear to litigate the federal preemption issue there. As noted earlier, when squarely presented with § 1926(b)'s preemption language in this case, the Texas PUC stated it was

13

required to follow the language of the Texas Water Code directing that it "may not deny a petition received under Subsection (a-5) based on the fact that a certificate holder is a borrower under a federal loan program." TEX. WATER CODE § 13.254(a-6). A Texas court may feel similarly constrained by the Texas statute. Thus, while Crystal Clear may be able to raise its preemption argument in state court, the existence of that forum is not a strong factor in the analysis.

In sum, the balance of the five factors weighs heavily against *Burford* abstention. As the Fifth Circuit concluded in *Aransas Project*: "This case arises under federal law, and, treading carefully, the federal courts need not become entangled in state law to adjudicate the [§ 1926] claim here." 775 F.3d at 653. The same is the case for this lawsuit.

### 2. *Younger*

Las Colinas next argues that the Court should abstain under the *Younger* abstention doctrine, which calls for abstention when there is a parallel, pending state criminal proceeding, or a case akin to that. *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). Though originally limited solely to criminal proceedings, the Supreme Court has since extended *Younger* abstention to two narrow categories of civil cases: (1) "particular state civil proceedings that are akin to criminal prosecutions" and (2) cases "that implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) and *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)). The *Sprint* court cautioned, though, that cases that fit within the *Younger* doctrine would still be "exceptional," and not the rule. *Id.*

Las Colinas argues that *Younger* applies here because the pending state litigation is an administrative enforcement proceeding, relying on *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432-33 (1982). *See* Dkt. No. 12 at 6. But the state administrative appeal in this

case has nothing to do with the enforcement of a state regulatory scheme. While the Supreme Court in *Middlesex* found that administrative proceedings may support *Younger* abstention when three identified elements[7] are met, it made clear in *Sprint Communications* that the three *Middlesex* factors were *in addition to* the threshold requirement that the civil proceeding be akin to a criminal prosecution. *Sprint Communications*, 134 S. Ct. at 592; *see also NOPSI*, 491 U.S. 350. The court explained that proceedings subject to *Younger* are "characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Id.* Proceedings within this category are generally "initiated by the State in its sovereign capacity." *Id.* (internal quotations omitted). Only if this threshold is met does the court move on to the *Middlesex* tripartite test.

As already noted, the administrative proceeding here does not meet these requirements. The case was not initiated by the state to sanction Crystal Clear for any violation of state regulations. Instead, the proceeding was initiated by Las Colinas, so that it could acquire water from a utility other than Crystal Clear. This is not unlike the situation in *Sprint Communications* where a private corporation initiated the action and no state actor lodged a complaint. Las Colinas' petition did not allege any violations of state law, or any wrongful act by Crystal Clear, but instead merely asserted that Crystal Clear was not "providing" water service to the area, and Las Colinas wanted to contract with a different water service provider. *See* Dkt. No. 11-1 at 16. Significantly, Crystal Clear was not even a party to the administrate proceeding, and had to request permission to intervene. *See id.* (citing in a footnote Crystal Clear's request to intervene). In essence, the entire proceeding arose from two companies litigating whether Crystal Clear had the exclusive right to provide water service

---

[7]They are: (1) there is an ongoing state judicial proceeding; (2) constitutional issues may be adequately addressed in the state court; and (3) the suit implicates important state issues.

to a certain customer. This is very different from the cases, such as *Middlesex*, where courts abstained because an administrative agency was enforcing a state law or regulation against a non-compliant party, and that party challenged the enforcement in a federal suit. In *Becker-Jiba*, another Texas district court reached the same conclusion concerning the application of § 1926, based on similar facts. *See* 2003 U.S. Dist. LEXIS 10334, at *28. Though *Becker-Jiba* was decided without the benefit of *Sprint Communications*, the court there found that *Younger* abstention was inapplicable because the state proceeding was "an action to adjudicate the respective rights of the City and [plaintiff] to provide water service as opposed to, say, an enforcement action to compel [the plaintiff] to comply with state law." *Id.* at 29-30.

### 3.    *Pullman*

The PUC next contends that the Court should abstain under *Pullman*. The *Pullman* abstention doctrine requires that a federal court dismiss an action "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984). Thus, "for *Pullman* abstention to be appropriate a case must involve (1) a federal constitutional challenge to state action, and (2) an unclear issue of state law that, if resolved would make it unnecessary for [the court] to rule on the federal constitutional question." *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.*, 283 F.3d 650, 653 (5th Cir. 2002).

The PUC argues that Crystal Clear's preemption claim is a constitutional challenge, and that no state court has interpreted "the reimbursement provision [in § 13.254(d)–(g)] that requires a utility to compensate the former CCN holder for any property rendered valueless," which "may mitigate any harm that § 1926(b) was enacted to prevent." Dkt. No. 11 at 14. They further argue that no

16

"state court [has] expressly considered the relationship between § 13.254's 'receiving water service' and § 1926(b)'s 'service provided or made available' standards," and if "they are found to be sufficiently similar, there would be no preemption problem." *Id.* at 14–15. But none of these alleged state law issues would allow the Court to avoid reaching the preemption issue. Starting in reverse, the question of whether there is a conflict between the "service provided or made available" language in § 1926(b), and §13.254(a-5)'s use of "receiving water service" *is* the preemption analysis. That is a federal law issue. By definition, all preemption questions involve comparing the language of a federal statute to the language of the allegedly preempted state statute, so if the PUC were correct, federal courts would have to abstain from all federal preemption cases. *Accord*, *Becker-Jiba Water Supply*, 2003 U.S. Dist. LEXIS 10334, at *21 ("There is no state-law ambiguity that must be resolved, and *Pullman*-type abstention does not apply."); *cf. N. Alamo Water Supply*, 90 F.3d at 915-16 (finding that the City violated § 1926 because the utility had "made service available"). Second, there is nothing unclear about the compensation provisions in § 13.254(d)-(g). Instead, the PUC is simply relying on those sections to make a "no harm no foul" argument that is of dubious relevance to the preemption analysis. Whether the fact that the Texas statute provides compensation to a federally indebted water association that has territory taken away is a defense to preemption is a question of federal law, as it involves interpreting § 1926(b), not the state law.[8]

---

[8] As noted, this is a dubious claim. If Congress had meant to allow a state to take away exclusive territory from a federally-indebted rural water company so long as the utility was compensated, it would have said that. Instead, Congress used language that is plainly a complete bar to such actions, prohibiting "inclusion of the area served by such association within the boundaries of any" private franchise "for similar service within such area during the term of such loan," full stop. If all it took to avoid the preemptive effect of a federal statute was compensation, state statutes would be chock full of such provisions.

At the end of the day, all of the decisive issues here are federal issues, and there are no unsettled state law questions that could allow the Court to avoid reaching the preemption issue. As such, *Pullman* abstention does not apply.

### 4. *Brillhart/Wilton* and *Colorado River*

Leaving no abstention doctrine unturned, the PUC lastly asserts that *Brillhart/Wilton* abstention should apply to this action. However—as Crystal Clear correctly argues, Dkt. No. 15 at 16—*Brillhart/Wilton* is "only applicable 'when a district court is considering abstaining from exercising jurisdiction over a declaratory judgment action.'" *Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 n.4 (5th Cir. 2002) (quoting *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F3d 948, 950 (5th Cir. 1994)). When there are claims for coercive relief in addition to the declaratory judgment claims, this type of abstention is analyzed under *Colorado River*. *Id.* There is no evidence that Crystal Clear's claims for injunctive relief are frivolous or that they were added to defeat *Brillhart/Wilton* abstention. Far from being frivolous, "an injunction has been the principal tool employed by the courts with which to enforce [§ 1926] and prevent violations." *Becker-Jiba Water Supply*, 2003 U.S. Dist. LEXIS 10334, at *9 (quoting *N. Alamo Water Supply*, 90 F.3d at 917). Therefore, the Court analyzes this argument under *Colorado River*.

The *Colorado River* abstention doctrine applies when there are parallel proceedings in federal and state court involving the same parties and the same issues. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976). *Colorado River* does not apply in every case in which there are parallel proceedings; it only applies where there are "exceptional" circumstances warranting abstention for the purposes of "wise judicial administration." *Id.* Courts look to six factors to determine whether these "exceptional" circumstances exist:

> (1) assumption by either court of jurisdiction over a res, (2) relative inconvenience of the forums, (3) avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums, (5) to what extent federal law provides the rules of decision on the merits, and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Kelly Inv.*, 315 F.3d at 497. The analysis of these factors "does not rest on a mechanical checklist," but instead "on a careful balancing of [them] as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 497–98 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

First, there is no *res* at play here, and thus no assumption by either the state or federal court over one. As discussed in *Becker-Jiba Water Supply*, a suit under § 1926(b) "does not ask th[e] court to transfer or exercise control over property." 2003 U.S. Dist. LEXIS 10334, at *10. The second factor also weighs against abstention, as both forums are in the same geographic area—indeed, in the same city. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000). Third, if this Court retained jurisdiction it would not create piecemeal litigation. This Court has no appellate jurisdiction over the PUC's order, and thus Crystal Clear's administrative appeal must proceed in the Travis County District Court. To the extent Crystal Clear has also raised in the state court the preemption argument it makes here, that is not enough to support abstention. The Fifth Circuit has specifically noted that "[t]he prevention of duplicative litigation is not a factor to be considered in an abstention determination." *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 1988). Rather, this factor looks to the "concomitant danger of inconsistent rulings with respect to a piece of property." *Black Sea Inv.*, 204 F.3d at 650–51. As neither court has assumed jurisdiction over any property, this factor weighs against abstention.

The fourth factor also weighs in favor of retaining jurisdiction. Though the state court case was filed first, "[p]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id.* at 651 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21). As Las Colinas noted, the parties have now set a briefing schedule in the state court case, with a hearing on the matter set for the end of January. Dkt. No. 31. Here, not only have the Defendants filed these two motions, but there is now also pending a motion for summary judgment. Thus, the two cases are proceeding apace, with the federal case slightly further along. Moreover, Crystal Clear is the plaintiff in both suits, and it desires to have this case proceed. This factor does not support abstention.

As federal preemption law provides the rule of decision here, the fifth factor weighs against abstention. The dominant issue in this case is a federal law issue. The final factor in the analysis looks to whether the state court can adequately protect the rights of the party invoking federal jurisdiction. As already noted, the PUC's insistence that it was bound to follow the state statute's direction to ignore the language of § 1926(b) gives the Court pause in saying that a Texas court would adequately protect Crystal Clear's federal rights. On the other hand, Texas courts have thoroughly analyzed the preemption issues presented by § 1926(b). *See Creedmoore-Maha Water Supply Corp. v. Tex. Comm'n on Envtl. Quality*, 307 S.W.3d 505, 518 (Tex. App.–Austin 2010, no pet.). Regardless, the sixth factor "can only be a neutral factor or one that weighs against, not for, abstention." *Black Sea Inv.*, 204 F.3d at 651.

The balance of the factors weighs heavily in favor of the Court retaining jurisdiction over this case. As such, *Colorado River* abstention is inappropriate.

## III. RECOMMENDATION

In accordance with the foregoing discussion, the Court **RECOMMENDS** that the District Court **DENY** Defendant Las Colinas' Motion to Dismiss (Dkt. No. 12) and The Public Utility Commission Official's Motion to Dismiss (Dkt. No. 11), except that the Court **RECOMMENDS** that The Public Utility Commission Officials' Motion to Dismiss (Dkt. No. 11) as to Executive Director Brian Lloyd be **GRANTED**.[9]

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

---

[9] Crystal Clear has also filed a Motion for Summary Judgment. Dkt. No. 19. In response, Defendants filed a Motion to Deny or Continue Deadline to Respond (Dkt. No. 20) and a Joint Motion for Extension of Time to File Response/Reply (Dkt. No. 21). Each has also filed timely responses, reiterating their assertions made in the above motions and urging more time for discovery. Dkt. Nos. 24 & 26. If the District Court adopts this Report and Recommendation, the Court therefore **RECOMMENDS** that the District Court at the same time **ORDER** Defendants to file substantive responses to Crystal Clear's Motion for Summary Judgment.

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 17th day of November, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE